UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BOJAN STEVANOVIC,

                              Plaintiff,

        v.                                                       1:25-cv-00760 (AMN/CBF)

MERATAS INC., DARIUS GOLDMAN,

                              Defendants.

---

APPEARANCES:                                  OF COUNSEL:

EL-HAG & ASSOCIATES, P.C.                      JORDAN EL-HAG, ESQ.
777 Westchester Ave – Ste 101
White Plains, NY 10604
*Attorneys for Plaintiff*

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On June 12, 2025, plaintiff Bojan Stevanovic ("Plaintiff") commenced this action against

Meratas Inc. and Darius Goldman (together, "Defendants"), bringing various claims pursuant to

New York Labor Law ("NYLL") and New York common law. *See* Dkt. No. 1 ("Complaint").

Presently before the Court is Plaintiff's motion for a default judgment under Rule 55(b) of the

Federal Rules of Civil Procedure. Dkt. No. 18 (the "Motion").

For the following reasons, the Court grants the Motion in part and denies it in part.

### II.    BACKGROUND

#### A. The Parties

Plaintiff is an individual residing in British Columbia, Canada. Dkt. No. 1 at ¶ 5. Plaintiff

alleges that Defendant Meratas Inc. is a corporation organized under New York law with its

1

principal place of business in Albany, New York.  *Id.* at ¶ 6.  Plaintiff alleges that Defendant Darius

Goldman is the CEO of Meratas and resides in Connecticut.  *Id.* at ¶ 8.

### B. Plaintiff's Factual Allegations

Defendants hired Plaintiff on or around May 16, 2022 as a Sales Development

Representative.  *Id.* at ¶ 22.  Plaintiff submits an agreement ("Agreement") signed by Plaintiff and

a representative of Defendant Meratas, consisting of an offer letter ("Offer Letter"), independent

contractor agreement, a nondisclosure agreement ("NDA"), and a non-compete agreement.  Dkt.

No. 1-2.  Although Plaintiff agreed to and signed the independent contractor agreement, *see id.* at

6-12,[1] Plaintiff alleges that he was in fact hired as "a non-exempt, W-2 employee," classified as

full-time, and compensated through regular payroll.  Dkt. No. 1 at ¶ 22.  Plaintiff further alleges

that Defendants did not allow him to set his own hours, expected him to keep to a 40-hour

workweek, and otherwise "exerted full control over [his] job duties, schedule, work conditions,

and pay."  *Id.* at ¶¶ 27, 37.  As to his pay, Plaintiff alleges that "Defendants compensated Plaintiff

with an annual base salary of $71,010.00."  *Id.* at ¶ 31.  Plaintiff's pay structure also included

performance-based commissions.  *Id.* at ¶ 32.  However, Plaintiff also alleges that Defendants

failed to provide him with a written wage notice and written wage statements in compliance with

the requirements of NYLL Section 195.  *See id.* at ¶¶ 30, 77-78.  Plaintiff alleges that Defendants

later promoted him to Account Executive.  Dkt No. 18-3 at ¶ 3.

On January 12, 2024, Defendant Goldman terminated Plaintiff's employment with

Defendant Meratas.  Dkt. No. 1 at ¶ 64.  About one month prior to his dismissal, Plaintiff alleges

that his access to the company-maintained Google document tracking commissions was revoked,

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic
filing system.

and that in response to his request for reinstatement, Defendant Goldman told Plaintiff that the company was restructuring his compensation plan. *See id.* at ¶¶ 43-47. Plaintiff alleges that on December 4, 2023, despite an expected commission payment exceeding $8,000.00, Plaintiff instead received a commission payment of $1,837.50. *Id.* at ¶ 48. Plaintiff subsequently complained about the reduced commission and asked for an explanation, which Plaintiff alleges was never provided. *Id.* at ¶¶ 49-51. Over the next month, Plaintiff alleges that he continued to have conversations about his compensation structure with his superiors, including Defendant Goldman, *see id.* at ¶¶ 52-61. Plaintiff further alleges that on December 29, 2023, Plaintiff "received his salary payment, but did not receive any commission" despite having earned approximately $9,000.00 in commissions that month according to his own records. *Id.* at ¶ 62.

On April 4, 2023, Plaintiff alleges that he filed a demand for arbitration with the American Arbitration Association ("AAA") pursuant to the Agreement, bringing claims under NYLL Sections 191-c, 193, 195, 215, and under common law. *Id.* at ¶¶ 11-12; *see* Dkt. No. 1-1 at 2-4; Dkt. No. 1-2 at 11 (arbitration clause). Plaintiff alleges that after serving the demand for arbitration on Defendants, Defendants "failed to take any substantive step to advance the arbitration, including but not limited to, failing to pay the required filing or arbitrator fees, failing to respond to AAA notices, and failing to otherwise engage in the selection of an arbitrator or participate in a preliminary hearing." Dkt. No. 1 at ¶¶ 12-13. Following Defendants' failure to arbitrate, Plaintiff filed this action. *Id.* at ¶¶15-16.

### C.  Plaintiff's Submissions

In support of the Motion, Plaintiff submits a factual affidavit detailing, among other things, his job responsibilities, *see* Dkt. No. 18-3 at ¶¶ 3, 6-11, his promised salary and commissions, *see id.* at ¶¶ 4-5, 14, 27, 31, and Defendants' alleged actions in violation of the NYLL, *see id.* at ¶¶

32-38.  Plaintiff also submits copies of the Agreement between Plaintiff and Defendant Meratas, Dkt. No. 1-2, a self-calculated accounting of Plaintiff's damages, Dkt. No. 18-5, and papers in support of attorneys' fees and costs, Dkt. Nos. 18-1, 18-6.

### D.  Plaintiff's Legal Claims

Plaintiff asserts five causes of action: (i) failure to pay commissions in violation of NYLL Section 191-c; (ii) failure to provide wage notices in violation of NYLL Section 195 *et seq.*; (iii) retaliation for engaging in protected activity under NYLL Section 215; (iv) unlawful deduction of wages in violation of NYLL Section 193; and (v) breach of the Agreement pursuant to state common law.  Dkt. No. 1 at ¶ 71-101.

Plaintiff also seeks the following damages: $15,162.50 in unpaid commissions; $71,010.00 in lost wages; liquidated damages under NYLL Sections 191 and 198; statutory penalties under NYLL Section 198; compensatory, emotional distress, and liquidated damages under NYLL Section 215; pre- and post-judgment interest; and $14,787.05 in attorney's fees and costs.  Dkt. No. 18-2 at 8.  Plaintiff contends that the total estimated damages are $227,593.62.  *Id.*; *see also* Dkt. No. 18-5 (Plaintiff's damages calculation).

### E.  Procedural History

Defendant Meratas was served on June 24, 2025, Dkt. No. 4, and Defendant Goldman was served on July 10, 2025, Dkt. No. 5.  To date, Defendants have neither appeared nor responded to the Complaint.  *See generally* Docket.[2]

---

[2]  The Court finds that Defendants' failure to appear in this action effectively constitutes a waiver of Defendants' right to compel arbitration under the Agreement.  *See, e.g.*, *NextGear Cap., Inc. v. Tristate Auto Serv. Ctr., Inc.*, No. 23-CV-9458, 2025 WL 897565, at *7 n. 5 (E.D.N.Y. Feb. 27, 2025), *report and recommendation adopted*, No. 23-CV-09458, 2025 WL 895849 (E.D.N.Y. Mar. 24, 2025) (finding waiver of contract's arbitration provision on motion for default judgment because defendant failed to appear).  The Court also notes that a provision compelling arbitration

On July 23, 2025, Plaintiff requested an entry of default against Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  Dkt. No. 6.  The Clerk granted the request as to both Defendants on July 25, 2025, Dkt. Nos. 7, 8, but United States Magistrate Judge Thérèse Wiley Dancks vacated both entries on July 29, 2025 and ordered a corrected entry of default only against Defendant Meratas because Defendant Goldman was due to answer on July 31, 2025, Dkt. No. 10.  The Clerk filed an entry of default as to Defendant Meratas later the same day.  Dkt. No. 11.  On August 15, 2025, Plaintiff renewed his request for an entry of default as against Defendant Goldman,  Dkt. No. 12, and the Clerk granted Plaintiff's request later the same day, Dkt. No. 13.

On September 30, 2025, Magistrate Judge Dancks granted Plaintiff's request, filed on September 29, for an extension of time to file a motion for default.  Dkt No. 17.  Plaintiff then filed the Motion on October 6, 2025, requesting the entry of a default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.  Dkt. No. 18.

## III.    STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  The first step is governed by Rule 55(a), which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Id.* (quoting Fed. R. Civ. P. 55(a)); *see also* N.D.N.Y. L.R. 55.1 (setting forth affidavit requirements).  Entry of a default "formalizes a judicial

---

does not implicate the Court's subject matter jurisdiction. *Id.* (citing *Am. E Grp. LLC v. Livewire Ergogenics Inc.*, 432 F. Supp. 3d 390, 399-400 (S.D.N.Y. 2020) (collecting cases)).

recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis*, 645 F.3d at 128. The second step "requires the plaintiff to seek a judgment by default under Rule 55(b)." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011). Entry of a default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled[.]" *Mickalis*, 645 F.3d at 128. A default judgment "ordinarily must be entered by the district judge, rather than by the clerk of court, except in certain circumstances[.]" *Id.*; *see also* N.D.N.Y. L.R. 55.2 (setting forth requirements for requesting a default judgment).

"Before entering a default judgment, the court 'must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law.'" *Windward Bora, LLC v. Brown*, No. 21-cv-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (alteration in original) (quoting *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-cv-6722, 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020)). Additionally, "[t]here must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (citations omitted). When evaluating a request for a default judgment, a "district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." *Mickalis*, 645 F.3d at 129 (quoting Fed. R. Civ. P. 55(b)(2)(B)-(C)).

While a court may enter a default judgment if the requisite standard is satisfied, the Second Circuit has cautioned that default judgments "are generally disfavored and are reserved for rare occasions[.]" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Because we have 'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . we have characterized a district court's discretion in proceeding under Rule 55 as 'circumscribed.'" *Mickalis*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron*, 10 F.3d at 95; and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)).

## IV.    DISCUSSION

### A.  Jurisdictional Requirements

The Court first considers its jurisdiction over this matter. While a "plaintiff has the burden to establish jurisdiction, a federal court has an independent obligation to determine whether subject-matter jurisdiction exists 'even in the absence of a challenge from any party.'" *Wilmington Sav. Fund Soc'y, FSB as tr. of Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 330 (E.D.N.Y. 2024) (quoting *Chapman v. U.S. Dep't of Just.*, 558 F. Supp. 3d 45, 48 (E.D.N.Y. 2021)). Diversity jurisdiction exists with respect to each of Plaintiff's claims. *See* 28 U.S.C. § 1332(a)(2). As to personal jurisdiction, the Court has general jurisdiction over Defendant Meratas, which is alleged to be incorporated in the state of New York. Dkt. No. 1 at ¶ 6. Defendant Goldman, however, is alleged to be a resident of the state of Connecticut. *Id.* at ¶ 8. While Plaintiff does not provide the authority under which the Court may exercise personal jurisdiction over Defendant Goldman, the Court finds that it has the requisite authority pursuant to Section 302(a)(1) of the New York Civil Practice Law and Rules.

Personal jurisdiction over an employer does not automatically create personal jurisdiction over that employer's individual corporate officer. *Gabal v. Scoutsee Inc.*, No. 18-cv-2236, 2019 WL 6220546, at *2 (S.D.N.Y. Oct. 25, 2019), *report and recommendation adopted*, No. 18-cv-2236, 2019 WL 6211386 (S.D.N.Y. Nov. 21, 2019).  However, under Section 302(a)(1), an individual corporate officer is subject to a court's personal jurisdiction when the individual officer participated in the in-state corporate activities that gave rise to the action. *Holguin v. Quality Furniture NY LLC*, No. 23 CIV. 0004, 2024 WL 4954048, at *5 (S.D.N.Y. Nov. 8, 2024), *report and recommendation adopted*, No. 23 CIV. 04, 2025 WL 50016 (S.D.N.Y. Jan. 8, 2025) (citing *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019)).  A court may exercise specific jurisdiction over an individual corporate officer "where the corporation's activities were performed for the benefit of the individual defendant, the activities were performed with the individual defendant's knowledge and consent, and the individual defendant 'exercised some control over the corporation.'" *Gabal*, 2019 WL 6220546, at *2 (citing *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 389 (S.D.N.Y. 2006)).

Here, Plaintiff alleges that Defendants Meratas and Goldman "(1) hired the Plaintiff, (2) terminated the employment of the Plaintiff, (3) set the wage rate of Plaintiff, (4) maintained payroll records concerning the Plaintiff, or (5) instituted work rules for the Plaintiff." Dkt. No. 1 at ¶¶ 7, 9.[3]  Additionally, Plaintiff alleges that Defendant Goldman restructured Plaintiff's commission structure, and in doing so stated that he "had chosen a random number he considered sufficient." *Id.* at ¶ 53.  Furthermore, Plaintiff alleges that Defendant Meratas agreed that its NDA with Plaintiff was to be interpreted according to the laws of New York. *See id.* at ¶ 21; Dkt. No. 1-2 at

---

[3] The Complaint twice alleges these facts against Defendant Meratas.  Based on the Complaint's organization, the Court interprets the second of these allegations as a typo meant to allege the same against Defendant Goldman.

8

15. Accepting as true Plaintiff's allegations that Defendant Meratas, a corporation operating in New York and availing itself of New York law, acted at the direction of Defendant Goldman to set Plaintiff's wages and terminate Plaintiff, the Court finds that it has specific personal jurisdiction over Defendant Goldman pursuant to Section 302(a)(1).

### B. Procedural Requirements

Here, Plaintiff requested and received entries of default against both Defendants in compliance with Rule 55(a) and Local Rule 55.1. Dkt. Nos. 6, 11, 12, 13. Plaintiff then filed the present Motion in accordance with Rule 55(b) and Local Rule 55.2 Dkt. No. 18. The Motion does not include a certificate of service demonstrating that Defendants received the Motion. *See generally id.* But because Defendants were served at the commencement of this action and have not "appeared personally or by a representative," Fed. R. Civ. P. 55(b)(2), Plaintiff was not required to effectuate further service with respect to the Motion. *See, e.g., Alston v. City of New York*, No. 22-cv-5395, 2024 WL 4100175, at *5 (E.D.N.Y. Sept. 5, 2024) ("This limitation in the rule is based on the common-sense assumption that if a party has ignored service of a summons and complaint, a plaintiff does not have to chase him down with subsequent notices to see if he has changed his mind."), *appeal filed*, No. 24-2521 (2d Cir. Sept. 25, 2024); *Rove LLC v. Antonio168*, No. 20-cv-02124, 2023 WL 6796034, at *3 n. 4 (S.D.N.Y. Oct. 13, 2023) (similar). Accordingly, the Court finds that Plaintiff has satisfied the procedural requirements for seeking a default judgment. *Windward*, 2022 WL 875100, at *2.

C. **Liability as a Matter of Law**

1. **Employment Relationship**

Despite Defendants classifying Plaintiff as an independent contractor, Plaintiff argues that he was in fact an employee for the purpose of the NYLL. *See* Dkt. No. 1 at ¶ 34; Dkt. No. 18-2 at 4-5. Accepting as true Plaintiff's allegations, the Court agrees.

The NYLL defines an employer as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). It defines an employee as "any person employed for hire by an employer in any employment." *Id.* at § 190(2). Generally, corporate officers may not be subjected to civil liability as employers for corporate violations of the NYLL unless a plaintiff alleges "that such persons exercised control of the corporation's day-to-day operations by, for example, hiring and firing employees, supervising employee work schedules, and determining the method and rate of pay." *Gregg v. Cmty. Care Companions, Inc.*, 252 N.Y.S.3d 379, 382 (N.Y. App. Div. 2026).

Under the NYLL, whether an employment relationship exists depends on "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Grp.*, 1 N.Y.3d 193, 198 (N.Y. 2003). When assessing the degree of control, relevant factors include "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule[.]" *Id.* While a court may consider the fact that a plaintiff agreed to a contract styled as an "independent contractor agreement," such an agreement by itself is not determinative of employment status and may be outweighed by facts collectively alleging that the plaintiff was an employee. *Ward v. Cohen Media Publications LLC*, No. 1:22-CV-06431, 2023 WL 5353342, at *6 (S.D.N.Y. Aug. 21, 2023) (finding that plaintiff plausibly pled that she

was an employee entitled to protection under, *inter alia*, the NYLL despite independent contractor agreement).

Here, Plaintiff asserts that despite the fact that the Agreement includes an independent contractor agreement, Dkt. No. 1 at ¶ 34; *see* Dkt. No. 1-2, he was in fact an employee because Defendants controlled his schedule and duties and because he received fringe benefits in the form of paid vacation and sick days. Dkt. No. 18-2 at 4. Plaintiff also alleges that Defendants compensated him through regular payroll, and that he received a base salary of $71,010.00 per year in addition to commissions. Dkt. No. 1 at ¶¶ 22, 31-32. While Plaintiff does not make further allegations suggesting that he was not in fact free to engage in other employment, the Court finds that Plaintiff's allegations, accepted as true and considered together with the submitted Agreement, show that Plaintiff did not work at his own convenience, received fringe benefits, was on Defendant Meratas' payroll, and worked on a fixed schedule. Thus, on a motion for default judgment, Plaintiff's allegations are sufficient to establish that he was Defendant's employee and subject to the protections of the NYLL.[4] Furthermore, the Court finds that Plaintiff's allegations are also sufficient to establish that Defendant Goldman, who Plaintiff alleges set his compensation and terminated him, was liable as an employer under the NYLL. *See id.* at ¶¶ 9, 53; *see, e.g.*, *Bonito v. Avalon Partners, Inc.*, 967 N.Y.S.2d 19, 20 (N.Y. App. Div. 2013) (finding that plaintiff properly sued individual corporate officer as employer under the NYLL where he alleged that officer "hired and fired employees, supervised and controlled employees' work schedules, determined the method and rate of pay, kept employment records, and approved any vacations").

---

[4] The Court notes an inconsistency between Plaintiff's allegations and his submission to the Court concerning his salary. The Offer Letter stipulates a base salary of $48,000.00, Dkt. No. 1-2 at 4, but Plaintiff alleges a base salary of $71,010.00, Dkt. No. 1 at ¶ 31. However, ultimately, this inconsistency does not bear on whether Plaintiff was Defendants' employee.

### 2. Breach of Contract

The Court first turns to Plaintiff's breach of contract claim.  Under New York law, a plaintiff bringing a claim for breach of contract must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages. *Ward*, 2023 WL 5353342, at *16.

Plaintiff asserts that the Complaint plausibly alleges that he and Defendants entered into an employment agreement and that he performed his job obligations without issue.  Dkt. No. 18-2 at 7; *see* Dkt. No. 1 at ¶¶ 22, 25-26; *see also* Dkt. No. 1-2.  Plaintiff further asserts that the Complaint plausibly alleges that the Defendants failed to pay his earned commissions under the agreement and that they have accordingly breached the contract.  Dkt. No. 18-2 at 7.  Accepting Plaintiff's allegations as true, the Court finds that they are sufficient to establish that Defendants are liable under the Agreement.  *See, e.g.*, *Newman v. ASA College, Inc.*, 754 F. Supp. 3d 521, 542 (S.D.N.Y. 2024) (finding that defendant for-profit college and its officers were liable to plaintiff employee for breach of contract).

### 3. NYLL Claims

The Court next turns to Plaintiff's claims pursuant to the NYLL.

#### a. Section 191-c Failure to Pay Commissions

Plaintiff argues that the Complaint adequately alleges that Defendants failed to pay Plaintiff his earned commissions and that Plaintiff is therefore entitled to recover his commissions pursuant to NYLL Section 191-c.  Dkt. No. 18-2 at 5.  However, Section 191-c is inapplicable to Plaintiff.

New York courts have consistently held that "salaried employees who receive commissions are protected under Section 191(1)(c), while independent contractors are covered by Sections

191-a through 191-c." *Gould v. Marconi Dev. Grp., LLC*, No. 119-cv-1454, 2020 WL 2042332, at *9 (N.D.N.Y. Apr. 28, 2020). Here, the Court incorporates its above finding that Plaintiff has established that he is an employee and accordingly finds that he is not covered by Section 191-c. Therefore, the Court denies Plaintiff's Motion for default judgment as to Plaintiff's claim under Section 191-c of the NYLL. *See, e.g., id.* (denying default judgment under Section 191-c to plaintiff employee who received fixed salary in addition to commissions); *Derven v. PH Consulting, Inc.*, 427 F. Supp. 2d 360, 369-70 (S.D.N.Y. 2006) (finding that Sections 191-b and 191-c did not apply to plaintiff receiving a fixed salary and benefits in addition to commissions).

### b. Section 195 Failure to Provide Wage Notices

Plaintiff's second cause of action seeks liquidated damages under NYLL Section 198 for the Defendants' violation of Section 195. Dkt. No. 1 at ¶¶ 76-79. Plaintiff asserts that the Complaint plausibly alleges that Defendant failed to provide the required wage notices at the time of hiring and the required wage statements for each instance of payment pursuant to Section 195. Dkt. No. 18-2 at 5-6.

Section 195 of the NYLL "requires an employer to provide an employee, at the time of hiring, with a notice (1) describing the employee's rate of pay for regular and for overtime hours; (2) stating whether the employer intends to credit allowances for items such as tips, meals, and lodging toward the employee's minimum wage; (3) describing certain health care benefits; and (4) providing other basic information." *Guthrie v Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024) (citing N.Y. Lab. Law § 195(1)(a)). Such notice is to be provided to employees "whether paid by the hour, shift, day, week, salary, piece, commission, or other." N.Y. Lab. Law § 195(1)(a); *see also id.* § 190 (including commission-based earnings within the definition of "wages" in NYLL Article 6). An employer must also provide a statement each time wages are

paid that details the calculation of regular and overtime pay for that pay period, along with other information on deductions and allowances. *Guthrie*, 113 F.4th at 303 (citing N.Y. Lab. L. § 195(3)). A plaintiff alleging a violation of Section 195 must show "some causal connection between the lack of accurate notices and the downstream harm." *Id.* at 308.

Here, the Court finds that the Complaint sufficiently alleges that Defendant violated Section 195. Additionally, the Court finds that the Complaint adequately alleges downstream harm because Plaintiff states that he was provided no reason or basis for the reduction in his commission pay. *See* Dkt. No. 1 at ¶¶ 50-56; *see, e.g.*, *Lambert v. New Start Capital LLC*, 799 F. Supp. 3d 258, 290-91 (finding that plaintiff adequately pled claim under Section 195 where plaintiff did not receive the requisite notices and showed that the compensation agreement terms did not reflect the actual pay and commissions she received). Accepting his allegations as true, the Court infers that Plaintiff therefore lacked the ability to challenge Defendants' "vague" restructuring of his compensation. *See id.*; *see also* Dkt. No 18-3 at ¶¶ 18-27; *see, e.g.*, *Rueda v. A & G Iron Works Corp*, No. 1:25-CV-1791, 2026 WL 183692, at *12-13 (E.D.N.Y. Jan. 23, 2026) (holding that plaintiff showed causal connection between lack of wage notices and downstream harm where it prevented him from challenging defendants' concealment of wage violations and pursuing remedial action sooner); *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040, 2025 WL 2731755, at *8 (E.D.N.Y. Sept. 25, 2025) (finding downstream harm resulting from NYLL Section 195 violation where Plaintiff alleged "lack of knowledge about the rates of pay he was receiving and/or should have been receiving" such that he could ascertain whether he was being properly paid). Accordingly, the Court finds that Plaintiff has established that Defendants harmed him by failing to provide the necessary wage notices and wage statements in violation of the NYLL.

14

### c. Section 215 Retaliation

Plaintiff next asserts that the Complaint adequately alleges that Defendant terminated Plaintiff from his position in retaliation for Plaintiff's complaints about his reduced commissions. Dkt. No. 18-2 at 6.  Here too, the Court agrees.

"To state a Section 215 retaliation claim, a plaintiff must allege (1) that [he] complained to [his] employer; (2) about conduct [he] reasonably believed violated New York Labor Law or any order issued thereunder; and (3) suffered an adverse employment action as a result."  *Tozzi v. Daleview Care Denter*, No. 24-cv-3741, 2026 WL 215418, at *6 (E.D.N.Y. Jan. 27, 2026) (citing N.Y. Lab. Law Section 215).  As to the complaint, a plaintiff need not cite to a specific statute or file a formal complaint, but an informal complaint raising a colorable violation of a statute is sufficient.  *See Gatto v. Fujitec Am., Inc.*, No. 21 CIV. 9754, 2024 WL 4306787, at *14 (S.D.N.Y. Sept. 26, 2024).  "To adequately plead causation, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Ward*, at *14 (quoting *Duplan v City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)) (internal citation and quotation marks omitted).  Proof of causation can be either "(1) indirect[ ], by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) direct[ ], through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Zuckerman v. GW Acquisition LLC*, No. 20-CV-8742, 2021 WL 4267815, at *17 (S.D.N.Y. Sept. 20, 2021).  As to indirect proof, "temporal proximity is enough to plead a prima facie case of retaliation if the proximity is 'very close.'"  *Zuckerman*, 2021 WL 4267815 at *19 (citing *Dhar v. City of New York*, 655 F. App'x 864, 865-66 (2d Cir. 2016)).  Generally, courts in this circuit have found that

15

a period of two or three months between the protected activity and the adverse action is the outer limit for causation based on temporal proximity. *Id.* (collecting cases).

Here, the Complaint alleges that on or around December 4, 2023, after Plaintiff received less than his expected commission for the month of November, he complained to his supervisors and Defendant Goldman about the reduction of his commission. Dkt. No. 1 at ¶ 50; *see* Dkt. No. 18-2 at 6; Dkt. No. 18-3 at ¶¶ 17-20. The Complaint also alleges that after further conversations addressing Plaintiff's concerns about his commission pay, work responsibilities, and a new compensation structure, Defendants terminated Plaintiff's employment on January 12, 2024. Dkt. No. 1 at ¶¶ 51-64. The Court accepts these allegations as true for the purposes of this Motion, and, considering that Defendants terminated Plaintiff a little more than a month after he began to complain, finds that Plaintiff has established by temporal proximity that his complaints were a but-for cause of his termination. As such, the Court finds that Plaintiff has established that Defendants retaliated against him under the NYLL. *See, e.g.*, *Ramah v. 138 Hillside Ave Inc.*, No. 20 CV 03317, 2021 WL 7906551, at *7 (E.D.N.Y. Aug. 24, 2021) (finding on motion for default that plaintiff who complained orally concerning wage deductions established "sufficiently close temporal proximity to establish causation" on his NYLL retaliation claim where plaintiff was terminated less than two months after his complaint); *Stevens & Co., LLC v. Tang*, No. 23-CV-1835, 2024 WL 1157344, at *3 (S.D.N.Y. Mar. 18, 2024) (finding that defendant who demanded payment of unpaid commissions sufficiently alleged counterclaim for retaliation under Section 215 by showing "a short period of time" between defendant's complaint and the alleged adverse action); *see also Feliciano v. City of New York*, No. 14 CIV. 6751, 2015 WL 4393163, *10 (S.D.N.Y. July 15, 2015) (stating that "where no additional facts are pled, temporal proximity

16

ordinarily requires that the allegedly retaliatory act occur within two months of the plaintiff's protected activity" and collecting cases).

### d.   Section 193 Unlawful Wage Deductions

Plaintiff's Motion also argues that Defendant is liable pursuant to NYLL Section 193 because Defendant made deductions from Plaintiff's earned commissions without Plaintiff's written authorization and without legal justification.  Dkt. No. 18-2 at 7; *see* Dkt. No. 1 at ¶ 91.

To successfully allege an unlawful wage deduction under Section 193, a plaintiff must show that "(1) there is an employer-employee relationship; (2) the employer makes a deduction from the employee's wages; and (3) the deduction is not otherwise permitted by law or authorized for the employee's benefit."  *Fersel v. Paramount Med. Servs., P.C.*, 588 F. Supp. 3d 304, 320 (E.D.N.Y. 2022) (citations omitted).  In 2021, the New York legislature amended Section 193 to clarify that "wage theft remains completely and without exception in violation of statute and all employees are entitled to full wages, benefits, and wage supplements earned."  *Birner v. Kensington Vanguard Holdings, LLC*, No. 24-CV-2743, 2025 WL 963311, at *5 (S.D.N.Y. Mar. 31, 2025) (quoting No Wage Theft Loophole Act, 2021 N.Y. Laws ch. 397 (codified as amended N.Y. Lab. Law §§ 193, 195)).  Specifically, Section 193(5) provides: "There is no exception to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements."  N.Y. Lab. Law § 193(5).  In application, therefore, a court assessing whether a plaintiff has sufficiently alleged a deduction in violation of Section 193 looks to whether plaintiff has alleged that the defendant neglected to pay a sum constituting a wage as defined by NYLL

17

Section 190. *See Birner*, 2025 WL 963311, at *5 (citing *Ryan v. Kellogg Partners Inst. Servs.*, 19 N.Y.3d 1, 3 (N.Y. 2012)).[5]

Here, Plaintiff alleges that for November, 2023, Defendants owed him a commission exceeding $8,000.00 but instead paid him a commission of $1,837.50. Dkt. No. 1 at ¶ 48. For December, 2023, Plaintiff alleges that he was owed approximately $9,000.00 in commission payments, but received no commission payments for that month. *Id.* at ¶ 62. Accepted as true, the Court is satisfied that these allegations sufficiently establish Defendant's liability as to Plaintiff's unpaid commissions pursuant to Section 193. *See, e.g.*, *Birner*, 2025 WL 963311, at *6 (denying motion to dismiss plaintiff's claim under Section 193 for "commissions due and owing under the [a]greement").

### D. Damages

Having found that Plaintiff has established Defendants' liability as to the above-cited provisions of the NYLL and for breach of contract, the Court now addresses whether the Motion is sufficient to award damages without a hearing or additional briefing. Plaintiff seeks a substantial sum in damages, comprising lost wages, unpaid commissions, liquidated damages, statutory penalties, pre- and post-judgment interest, and attorneys' fees and costs. *See* Dkt. No. 18-2 at 8; Dkt. No. 18-5. However, the Court finds that Plaintiff's Motion fails to provide a sufficient evidentiary and legal basis on which to fully calculate damages.

---

[5] This approach is broader than the previous majority view that limited recovery under Section 193 to allegations that a defendant employer deducted a specific amount from a plaintiff employee's wages. *See, e.g.*, *Ward*, 2023 WL 5353342, at *16 (finding that plaintiff pleading failure to pay entire wages under her contract did not plead Section 193 violation); *Zuckerman v. GW Acquisition LLC*, No. 20-CV-8742 (VEC), 2021 WL 4267815, at *16 (S.D.N.Y. Sept. 20, 2021) (dismissing Section 193 claim where plaintiff failed to allege "any facts about any specific deductions"). But even under the previous view, Plaintiff's allegations here are sufficient to establish liability because Plaintiff alleges in at least one instance that Defendant paid him a specific amount below his expected commission rate. Dkt. No. 1 at ¶ 48.

For example, the Motion plausibly alleges that Plaintiff received a base salary but submits seemingly inconsistent supporting evidence regarding that salary—Plaintiff's Offer Letter stipulates a salary of $48,000.00, *see* Dkt. No. 18-4 at 25, but Plaintiff states in his Motion and affidavit, without further evidence, that his salary was $71,010 and seeks that amount in lost wages, *see* Dkt. No. 18-2 at 3; Dkt. No. 18-3 at ¶ 4; Dkt. No. 18-5. Similarly, as to Plaintiff's commissions, Plaintiff's Complaint and Motion assert that Plaintiff was entitled to "over $8000.00" for November 2024, Dkt. No. 18-2 at 7, and "approximately $9,000[.00]" for December, 2024, Dkt. No. 1 at ¶ 62, but also rounds those indeterminate amounts to an exact $8,000.00 and $9,000.00 to arrive at a total owed commission of $15,162.50 after subtracting the $1,837.50 that Defendants already paid, Dkt. No. 18-3 at ¶¶ 31-32. Plaintiff further states that he is entitled to an additional $15,162.50 in "liquidated damages equal to 100% of the unpaid commissions" under "applicable wage laws, including the New York Labor Law and the Fair Labor Standards Act," but fails to cite a specific statute and also fails to explain why and how the Fair Labor Standards Act applies given that Plaintiff has not raised any claims pursuant to that law. *See* Dkt. No. 18-3 at ¶ 35.[6]

Plaintiff also claims to seek the statutory cap of $20,000.00 in liquidated damages as provided by Section 215, Dkt. No. 18-2 at 6, but in a different submission calculates the Section 215 liquidated damage award as another $71,010.00 and instead characterizes the $20,000.00 sum as compensatory damages for emotional distress without providing evidence in support of that

---

[6] To the extent that Plaintiff is seeking damages for unpaid commissions pursuant to Section 191-c, the Court denies that claim. *See supra* Section IV.C.3.a. Additionally, to the extent that Plaintiff's breach of contract claim seeks damages that are duplicative of his statutory claims, the Court notes that the final amount of such statutory damages should be deducted from any such breach of contract damages. *See Newman*, 754 F. Supp. 3d. at 543 (finding that while breach of contract claims are compatible with NYLL claims "if the damages sought are for different wrongs," any duplicative damages should be offset to avoid a double recovery).

amount or any legal basis for the recovery of emotional distress damages, *see* Dkt. No. 18-3 at ¶ 3; Dkt. No. 18-5.

Because the Court cannot discern a consistent evidentiary or legal basis for the various amounts that Plaintiff proposes as damages, the Court finds it "necessary and proper to hold and inquest on damages" with respect to Plaintiff's claims. *Mendes v. Prime Mgmt. Consultants LLC*, No. 1:24-CV-01301, 2026 WL 865758, at *10 (N.D.N.Y. Mar. 30, 2026) (citation and internal quotations omitted). The Court further exercises its discretion pursuant to Rule 55(b)(2) and refers this matter to United States Magistrate Judge Carla B. Freedman for a damages inquest. *Mickalis*, 645 F.3d at 129.

V.    **CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that Plaintiff's NYLL Section 191-c claim be **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiff's Motion for Default Judgment as to his claims for breach of contract and under NYLL Sections 193, 195, and 215 be **GRANTED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Carla B. Freedman for a damages inquest; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 13, 2026
        Albany, New York

Anne M. Nardacci
U.S. District Judge

20